Your honors, good morning. Gary Burcham on behalf of appellate Mr. Ayala-Ventura. The government's theory in this case was that Mr. Ayala began to execute this crime not when he brought the drugs across the border but a few weeks earlier than that when he had purchased the pickup that he was arrested in and more importantly that he had given a false identity when he bought that pickup. The government mentioned it's an opening, it introduced evidence in its case-in-chief to try to establish this point and then it mentioned it multiple times in closing argument. Mr. Ayala in his defense attempted to rebut this theory and essentially to show that the government got this issue totally wrong that he was not the person who had bought the truck on that occasion, that he had never misrepresented his identity to anyone during during the case. The government, excuse me, the district court denied Mr. Ayala the right to introduce the evidence that he needed to rebut this claim and we're asking for a new trial for Mr. Ayala on that basis. The first and most important piece of evidence that the district court excluded was the photograph, it's in ER 47, that he attempted to introduce to demonstrate that he had not been the person who purchased the vehicle. Who took that picture, do we know? Excuse me? Do we know who took that picture? We don't know who took the picture and put it on Facebook. Do we know when it was taken? No, your honor. Do we know who the people are in the picture? We believe we know who the people in the picture are. Well, did anybody testify the people in the picture by name? I know these people and that's the person in the picture. Anybody say that? No, your honor. In what way then can we say the judge abused his discretion in finding that it wasn't sufficient foundation for the picture? Well, because pursuant to rule 104, the district court is required to consider all the surrounding evidence to determine if the picture is authentic, if the picture is what it's purported to be. And if we look to all the surrounding evidence in this case, it was very clear that this was an authentic picture showing the gentleman and the two kids standing in front of the 715 South Olive Street home. We have the gentleman in ER 47 clearly being the same gentleman in the photograph that was showed to the seller of the vehicle before trial. We have both of these photos coming from the same Facebook page. We have both of these photos coming from the Facebook page of Jesus Novarone, the name that was given by the buyer of the vehicle on the DMV liability transfer form. We have the text next to the picture, which was not going to come in at trial. We have the text next to the picture, which seems to show the three people excited for a Mexican national soccer game and with a the girls wearing a Mexico t-shirt. And so while we didn't have anyone specifically testify that they took the photo and put the photo on Facebook, if we look at the the surrounding circumstances for the photo and where it came from, it indicates very strongly that this was an authentic photo and this was something that Mr. Ayala should have been allowed to introduce to rebut the government's claim that he lied about his identity. I want to be clear about why this photo was so important. We had Exhibit A, which was shown to the seller before trial and Exhibit A is ER 66. It's the photograph of the gentleman sitting there and it's the same gentleman that's in front of the house. So we have the seller identifying the gentleman in ER 66 with high probability is the guy who actually bought the vehicle from him in late November of 2015. And the reason why it's important that it was important to have ER 47 come in is because the gentleman, the same gentleman in Exhibit A who's in ER 47, is standing in front of the house at 715 South Olive, which is the address that was put on the liability release form. So without ER 47, all we have is a gentleman identified by the seller of the vehicle as a person who looked like the person who had bought the vehicle. We have information showing a Jesus Novarone living at 715 South Olive Street, but we don't have the link, which is that this is Jesus Novarone. This is the guy who lives at 715 South Olive Street. And that's why, well let me just stop you there. The picture that was shown to the seller of the vehicle, that came in? It did. That was admitted as that? That was admitted during the cross-examination of the seller. And I take it your client doesn't look much like the person in that picture? Correct. This is not... So the jury heard and heard evidence, which if they believed the seller, they knew that it was someone else who was the direct purchaser and that your client then would have been a purchaser presumably from this other gentleman, whatever his name was. You had records showing that a real Jesus Novarone existed and actually lived or was registered at that address. So I'm not sure what more, in terms of making the argument that you laid out as the keystone of the defense, I'm not sure what more you needed. Well the government certainly did not think, as your Honor is implying, that by introducing this photo that suddenly the argument that Mr. Ayala did not lie about his identity was foreclosed. The government continued to argue that in closing. The government thought it had that argument. And the reason why 47 was important is because it totally cut the legs out of the government's argument. Without this photo in ER 47, the government still had a valid, viable argument that Mr. Ayala was the guy who bought the truck. Well you also contested second evidentiary ruling, right? The statement of the female at the 715 South Isle Street address. Your Honor, there was evidence from public records that a Jesus Novarone had lived at 715 South Isle. But the better evidence, as to that point, is the woman at the house saying, yes. And the statement that she gave was never offered for its truth. It wasn't offered to show that he didn't live there anymore. He could have still lived there. He might have never lived there but had gotten mail there. The reason it was offered was to show a link between Jesus Novarone and 715 South Isle. So it was never offered for its truth. How do you make the link? How do you make the link if you don't accept the truth of what she said? Because she knew the name. The investigator went to the door and said, I'm looking for Jesus Novarone. And she said, he doesn't live here anymore. So she knew who he was. Isn't that just like saying he had lived here at one time but he doesn't live here anymore and that's offered to show that he had lived there once before? I don't think so, Your Honor. I think that's what the government's arguing. But I think that there are other alternative interpretations of that and uses of that. What's the other alternative? What's the other interpretation? That maybe he still lived there. Well, it still goes to prove that he had a connection. That's the point of the evidence, that that's the truth of what's asserted. That he either lived there or had lived there. Well, I think the truth of what's asserted is what she said. He doesn't live here anymore. The truth of that is he doesn't live there anymore. What we're looking for is just the link, just the mere fact that... Wait a minute. That's a different statement from the answer that says, if you ask them, does Jesus Novarone live here? She just says no. That's different from saying he doesn't live here anymore. Does it? Just to say no doesn't imply that he lived there previously. So you have to, you know, go for truth, doesn't it? Well, I think we take the whole statement in considering this issue. And I think that the truth of the matter of the statement is that he didn't live there anymore. And if we take, if we assume that that statement is not true, is the statement still relevant? It is. Because the woman at the house knew Jesus Novarone. And there was a connection between him and that house. And again, that's the crucial connection. I know that there was evidence in the record sort of dancing around these issues. But the government argued at closing, I think on three occasions, that he lied when he bought the truck. That was an important consideration for the jury. And if 47 would have come in, that argument would have been completely foreclosed. Let me ask you one more question before you sit down about harmless error. So let's assume that you did in fact get all this evidence in. It still seems to me all you would have shown is that your client purchased the truck from Jesus Novarone rather than from the immediate seller. So? He still was caught by himself in a truck with all these drugs hidden in a very elaborate way in the engine block. I don't know. I just don't see what. Yeah. Yeah. You would have rebutted this argument that the government was making. But you'd still have to contend with pretty damning evidence. He was the registered owner of the vehicle. He was the sole occupant that the drugs were inside the engine, which is somewhat unusual. But I think we can't discount the effect of on the jury of the government's argument, which remained viable by the time of closing, that when he bought the truck, he lied about who he was. I mean, if you're going to smuggle drugs and you're going to buy a pickup truck to do it. But he registered the thing in his name. So I mean, that's what I don't. Okay, fine. You've rebutted the claim that he gave a false name to the immediate seller of the vehicle. But he then wasn't trying to hide his identity from DMV. He registered the truck in his own name. Well, he did before smuggling the drugs. So there we are. I mean, it cuts both ways. But I mean, it was one of the first thing the government said in opening was that this case started a few weeks before when he gave a false statement. And that that was a theme that resonated all the way through trial. They spent a lot of time at trial eliciting this evidence from Castillo and arguing about it. And in closing, in rebuttal and in the closing, they said, look, look to the circumstances of the purchase of the vehicle. So the government wouldn't let it go. They thought it was an important enough issue to keep raising. And I just think that to a jury, it would look real fishy if someone bought a truck, gave a false identity and then was caught with drugs in it later on. Okay. All right. We'll give you a minute for rebuttal. Let's hear from the government. May it please the court. Ajay Krishnamurthy for the United States. So let me ask you this. I guess I'm inclined to agree with your opponent that at least the photo of the man standing in front of the house should have come in. And I guess I don't see, I'm trying to figure out what your legal position is. Are you saying that every time a photo is admitted in evidence, you have to have basically either the person who took it provide foundation or somebody who was present when the photo was taken provide foundation? That's not quite it. Under rule 901, there's typically two ways in which photographs come in. The first is when a witness with knowledge of the scene testifies, it's a fair and accurate depiction. That could be someone that took the photograph, someone that was there when the photograph was taken, or someone that has seen the scene so many times that he can testify that it's fair and accurate. Well, no, if the person wasn't there when the picture was taken, they're not going to be able to verify, for example, in this case, that those people in fact were standing in front of the house when the picture was taken. They don't know that. Could have been doctored, right? I thought that was your, is that what you're trying to argue to us, I guess, is that the reason there was no adequate foundation is because there was some possibility that the photo was doctored, that those people were superimposed against the background of the house, and that they really weren't, in fact, standing there? To take your first question, to take the first question first, that third circumstance, people that are familiar with the scene, it usually comes into play when there is a picture of a building, for example, something that is a static image that doesn't change, that doesn't depend here as it does with a person connected to a place. The idea of alteration certainly is... Is that why you wanted to keep it out, because you thought the photo had been doctored? That is certainly one concern. In this case, there is no evidence of who the person the photograph was. Okay, so if that's your position, then you are saying that every time a photo is admitted, someone who either was present when the photo was taken or the photographer, him or herself, must testify to lay the foundation. That's your position, apparently? I don't think that's actually consistent at all with our case law, but is that what you're arguing? So the other line of cases that I've seen is that a photograph can be authenticated by describing the process through which it's taken. So, for example, surveillance photographs... Well, excuse me, excuse me. If they had had somebody who didn't take the picture, was impressive, but could have said, I know the person in the picture and that's whatever the guy's name is, that would have been sufficient, wouldn't it? That would have been circumstantial evidence leading to authenticity. No, not according to your theory. If I understand your argument, the main problem with the picture is no one ever said the person in the picture is whatever this guy's, Jesus, whatever his name was. Isn't that the basic problem? That is the basic problem. But, for example, if someone had known that that person was Jesus Novorone and known that the photograph had been taken between such and such dates and known that Jesus Novorone lived at that address between such and such dates, all of that would be circumstantial evidence leading to that photograph's authenticity. But none of that was present here. Whether the person in the picture was the same person in the other picture, that was a question for the jury to decide, right? They don't look terribly alike in my mind, but there's, you know, there's at least a resemblance. It seems to me that was a jury question. But the photograph isn't established as authentic simply because it's the same person as in Exhibit A, because there's no identity established as the person in Exhibit A would have to be authentic for this photo because it was offered for the purpose of showing the person in the photograph stood in front of that address. Right. Was that connection between person and place? Right. I thought that was your problem, was that supposedly the people who are in that picture, whoever they are, that they might not really have been standing in front of that particular house when the photo was taken. That's correct. My point about the circumstantial evidence is that in some cases, a photograph could be authenticated by circumstantial evidence. So if there was knowledge about who the people in the photograph were, and if someone did testify that those people lived at that address at that time, and we knew that the photograph was produced at that time, all of those would be circumstances tending to establish that it may in fact have been authentic, but none of that. Well, the purpose of the defendant's offer of that Facebook shot was to show a relationship between the person standing in front and the building, right? Correct. That, you know, maybe at some recent time there was some relationship, and you can draw the further inference that, well, the relationship was they lived there at one time, right? Correct. So what's important from your perspective in challenging the admission is that no one testified that whenever this time period is, you know, that we're talking about, that no one testified that he or she saw this guy standing in front of the building during that time period. Isn't that one of the things you think is important for a foundation? That is correct. And there's no testimony like that? There is no testimony about when the photograph was taken or who it depicted. That's correct. If I could turn briefly to harmlessness for a second, both the purpose of the photograph and the out-of-court statement were intended to confer some sort of legitimacy to the title of transfer certificate that a person named Jesus Navarone had actually lived at 715 South Olive Street at some point. But that fact had never been in dispute throughout the trial. A Homeland Security agent testified that public record searches show that he did. The defense investigator testified to the same. So neither the photograph nor the out-of-court statement could have added to the legitimacy of the claim.  I think the other thing that I want to ask is, what is the, what is the standard we apply in testing whether, assuming error, that it was harmless? So if, like, you know, more probably than not affected the verdict or something like that, or what's the standard? There are two potential standards in play. The first is if the deprivation of, or the inadmissibility of evidence result in a constitutional error, the government would have the burden of proving that it was harmless beyond a reasonable doubt. That standard only comes into play when a defendant's, the preclusion of evidence prevents a defendant from making a defense at all, and that standard is discussed in United States v. Stieber. Well, is that in dispute here? In other words, defendant contending that this was constitutional error? He is, he is contending that it's constitutional error, but for the reasons that I described, he was not prevented from making that defense. He- Well, all right. So assuming that the error was of constitutional magnitude, why is it harmless? Because the exact same information came in through the testimony of the Homeland Security agent who testified that someone named Jesus Novarone previously lived at that address, and the testimony of the defense investigator who testified to the exact same thing. And that's sufficient in your mind to conclude that it was harmless beyond a reasonable doubt? Correct. Because if it meets the beyond the reasonable doubt, then obviously it meets the lower standard, right? Just for evidentiary error. Correct. But our position is that it wasn't constitutional error simply because Mr. Ayala Ventura had that defense available to him in any event. For the same reasons, that information came out and he did argue it at closing. When you say that evidence again, that the buyer was Jesus Novarone, and Novarone at one time lived at this address? Yes. Although to be- Are those factors in evidence? Yes. Although to be clear, there's never any evidence presented that Jesus Novarone was actually the buyer. The only evidence is that he was listed on the DMV title of transfer certificate and that he once lived at that address. Well, and then the seller identified a picture of someone who we're guessing was Jesus Novarone as the actual purchaser. Correct. So there was that evidence. Correct. And that also came into trial. Right. And that really wasn't contested. So at trial, the seller of the vehicle identified Mr. Ayala Ventura as the purchaser. Before trial, he had met with the defense investigator. And at that time, he told the defense investigator, the person in the photograph in Exhibit A was not Mr. Ayala Ventura. But at trial, after that point of contention came out, the seller of the car also said that the person in the photograph looks something like the defendant in any event. If there are no further questions. Okay. Thank you very much. Thanks very much. Thank you. Give you a minute for rebuttal. Thank you very much. Just a couple of points. Mr. Ayala did not buy the truck for Mr. Castillo. And he never gave a false name to anyone. Castillo at trial walked over right in front of Mr. Ayala and pointed to him and said, this is the guy who bought the truck. And the government wanted the jury to believe that. The government wanted the jury to think that he bought the truck and he lied about his identity. They went to great efforts to keep ER 47 out. If it wasn't such a big deal, why not let it in? They argued it right out of the gate in opening. They argued it during closing argument. They argued this point during rebuttal. But do you disagree with the government's contention that every fact which you believe is approved or supported by that exhibit is already there already is evidence in the record on those points to support your position. Minus one issue. And this is the most important issue. And this is why this, this, this exhibit was crucial that the guy and exhibit a was the guy living in seven, 15 South dollar. We have his use. No, we're on South dollars. That's over here. We have the guy in exhibit a looks like the guy who bought the truck, but we don't have the link up. And the link up is what would have completely cut the legs out of the government's argument that this trial started this crime a few weeks before trial when he bought the truck and he gave it to Facebook page. Doesn't show that he bought the truck. It shows he's standing in front of 17, seven, 15 South dollar. And if we combine everything, put it all together and we have the, the, the identification of, of exhibit, the guy in exhibit a is a person who bought the truck and then on, on the information on their DMV sheet, we have his use. No, of our own is seven, 15 South dollar. And then we show the guy in exhibit a standing in front of seven to 15 South dollar. That's a real strong, really, really strong argument that the government got this point wrong. He's used to grow and bought the truck. He gave his real name when he bought the truck and Mr. Ayala did not start this crime weeks before by falsely stating his identity. Okay. Let me, let me, I want to make sure I understand the defense cause I'm, I'm getting confused. I'm afraid let's suppose Navarone bought the truck. Okay. That's your theory, right? How does it wind up? Uh, how does Mr. Ayala wind up behind the wheel? Well, he obviously, uh, at some point got the truck from Mr. Navarone, acquired the truck from Mr. Navarone. And your theory is that when he bought the truck, it came complete with three and a half kilograms of, uh, meth in it. That was one of the theories, uh, proffered by defense counsel, um, or that he had, the vehicle had gone to Mexico and the drugs had been placed in there without his knowledge of Mexico. So defense counsel was honest with the jury and posited a couple of different possibilities as to how the drugs got in there. Um, he wasn't sure. And he was honest with the jury about that, but he did set forth a couple of viable possibilities as to how this truck later on came to have 3.5 kilograms of meth in the engine. But, but wait a minute. Now, one of the hypotheses that, uh, Judge Silverman suggested, and you agreed that, that the meth was already in the truck when he bought it, correct? Doesn't that mean he would have paid a lot more for it? Uh, well that, that went back to a 2014, uh, uh, event when the truck was, uh, towed, it was impounded. The person who owned the truck didn't get it out of impound. It was auctioned off. That's how the truck was originally purchased. And so the theory was, and it, it makes, it makes sense that if you have a truck and it's impounded and it's got drugs in it, maybe you don't want to go to the impound yard and say, Hey, that's my truck and get it. And so that, that was one of the, one of the theories that was forwarded by defense counsel. Okay. Thank you. All right. Thank you very much. Thanks very much. The case just argued will be submitted.
judges: Tashima, Silverman, Watford